IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JOVAN LAPORSEK | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:18-cv-527 |
| | ) | |
| CHRISTOPHER BURRESS, et. al. | ) | By: Elizabeth K. Dillon |
| | ) | United States District Judge |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Jovan Laporsek brings this action against defendants Christopher Burress and Cooke Trucking Company, Inc. (Cooke), asserting claims of negligence and vicarious liability stemming from a collision on April 5, 2017, in which Burress's tractor trailer collided with Laporsek's vehicle. (Am. Compl. ¶¶ 6–14, Dkt. No. 29.) Laporsek further seeks punitive damages against Burress for willful and wanton conduct or conduct in conscious disregard for the rights and safety of others. This matter is currently before the court on Burress's and Laporsek's cross-motions for partial summary judgment. Laporsek seeks summary judgment on the issue of whether Burress was acting within the scope of his employment with Cooke at the time of the accident or, in the alternative, requests the court exclude evidence of Cooke's internal rules, which prohibit driving under the influence. (Dkt. No. 62.) Burress seeks summary judgment on the issue of punitive damages for willful and wanton behavior. (Dkt. No. 81.) The issues are fully briefed, and the court held a hearing on these motions on November 15,

1

2019, at which time the court took the motions under advisement.[1]  For the reasons stated below, the court will grant Laporsek's motion and deny Burress's motion.

## I. BACKGROUND

On April 5, 2017, at approximately 10:25 a.m., Burress and Laporsek were both traveling on I-81 in Wythe County, Virginia, when Burress's tractor trailer crossed the median and collided with Laporsek's vehicle.  (Burress Dep. 21, 55, Dkt. No. 88-1.)  Prior to reporting to work that day, Burress drank approximately 750 ml of whiskey from the bottle.  He stopped drinking at approximately 7:00 a.m. or 8:00 a.m. and has stipulated that his blood alcohol concentration (BAC) was 0.198% at the time of the accident.  (*Id.* at 21, 47–48.)  After picking up his tractor trailer and co-driver from the Cooke Trucking "yard," Burress did not make any stops before the time of the accident.  (*Id.* at 55.)

Burress has admitted liability on the sole negligence count in Laporsek's complaint. (Def. Br. Supp. 2, Dkt. No. 81.)  He also reported that he has one previous conviction for driving under the influence (DUI).  (Burress Dep. 17.)

Laporsek points out that prior to the accident, Burress hit a rumble strip (*id.* at 65–67) and caused a witness, Wayne Wingfield, to run off the road to avoid contact with Burress's tractor trailer before Burress collided with Laporsek (Wingfield Aff. ¶¶ 1–4, Dkt. No. 88-1 at 48).[2]

---

[1] At the November 15, 2019 hearing, the parties also argued Cooke's motion for sanctions due to spoliation of evidence (Dkt. Nos. 71, 77), and various motions to exclude testimony of expert witnesses (Dkt. Nos. 63, 73, 76, and 79).  The court also took these motions under advisement and will address them in separate memorandum opinions.

[2] Laporsek also asserts that Burress "almost hit[] a guard rail," but the only evidence he cites is deposition testimony in which Cooke's safety director is asked "So hitting a rumble strip and almost hitting a guardrail, that's not an extreme situation in your opinion, yes or no?"  (Sidden Dep. 48, Dkt. No. 88-1, Ex. D.)

Wingfield witnessed Burress "swerving all over the road," while two other tractor trailer drivers flashed their headlights at the "erratic" driver. (*Id.*) Wingfield also blew his horn at Burress, and Burress's co-driver, who was in the sleeping compartment, stated "Goddamn it, Chris," but Burress did not stop or slow down.[3] (Burress Dep. at 65; Wingfield Aff. ¶ 3.)

Federal Motor Carrier Safety Regulations (FMCSRs) require commercial drivers to receive drug and alcohol training, which Burress received both in professional driving school and from Cooke. (Burress Dep. at 10–13.) Burress also knew the regulations set the presumption of intoxication for covered truck drivers at a BAC of 0.04%—a stricter standard than for other members of the driving public. (*Id.* at 72–73.) Additionally, Burress has acknowledged that driving a tractor trailer requires different skills than driving a regular car or SUV and that the damage caused by an accident involving a tractor trailer could be worse than damage caused by other vehicles. (*Id.* at 38–39.)

Laporsek asserts that Cooke is liable for Burress's negligence under the doctrine of respondeat superior. It alleges that Burress was an employee of Cooke and would "drive tractors to places Cooke would arrange in advance in exchange for wages, using Cooke provided motor vehicles and trailers." (Am. Compl. ¶ 8.) Cooke admits that it employed Burress but argues that Burress was operating outside the scope of his employment at the time of the accident because he was intoxicated.

Laporsek also seeks $350,000 in punitive damages against Burress for willful and wanton negligence. Because Burress had a BAC over the legal limit even after receiving training on the

---

[3] It is unclear from the evidence presented what prompted this comment from Burress's co-driver.

effects of alcohol when driving, and because Burress's intoxication was a proximate cause of the accident, Laporsek asserts that Burress's actions were willful and wanton. He also alleges that Burress is subject to statutory punitive damages under Virginia Code § 8.01-44.5. In response, Burress argues that his conduct is not egregious enough to meet Virginia's standard for willful and wanton conduct and that Laporsek failed to plead his statutory punitive damages claim with enough specificity to put Burress on notice as required by Federal Rule of Civil Procedure 8.

## II. DISCUSSION

### A. Standard of Review

Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists only where the record, taken as a whole, could lead a reasonable jury to return a verdict in favor of the non-moving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). In making that determination, the court must take "the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc) (quoting *Ausherman v. Bank of Am. Corp.*, 352 F.3d 896, 899 (4th Cir. 2003)).

A party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citations omitted). Moreover, "[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Id.* at 247–48.

4

Instead, the non-moving party must produce "significantly probative" evidence from which a reasonable jury could return a verdict in his favor. *Abcor Corp. v. AM Int'l, Inc.*, 916 F.2d 924 (4th Cir. 1990) (quoting *Anderson*, 477 U.S. at 249–50). "While courts must take special care when considering a motion for summary judgment in a discrimination case because motive is often the critical issue, summary judgment disposition remains appropriate if the plaintiff cannot prevail as a matter of law." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958–59 (4th Cir. 1996).

**B. Laporsek's Motion for Partial Summary Judgment**

Laporsek moves for summary judgment on the issue of whether Burress was acting within the scope of his employment with Cooke when he drank 750 ml of whiskey before operating his tractor trailer. Alternatively, the motion seeks to exclude the use of Cooke's private rules—specifically, that it was against Cooke's rules for a driver to drive while intoxicated—as evidence.

Cooke admits that Burress was an employee of Cooke and was intoxicated while driving; however, it disputes Laporsek's allegations that "Burress was driving under the direction of, on a route for, for the sole benefit of, and under the employment of, Cooke Trucking." It further disagrees with Laporsek's assertion that "Burress had not deviated from that route or done anything outside the scope of employment with regard to his location." (Dkt. No. 62-1, at 6.)

"The determination of whether an employee acted within the scope of employment requires the application of the law of the state where the tort occurred." *Goodwyn v. Simons*, 90 F. App'x 680, 682 (4th Cir. 2004). "For the most part, Virginia courts take a fairly broad view

5

of scope of employment, and hold that even intentional torts may be within the scope of employment." *Gutierrez de Martinez v. Drug Enforcement Admin.*, 111 F.3d 1148, 1156 (4th Cir. 1997). "Vicarious liability claims benefit from a unique presumption that shifts the burden of production on the scope-of-employment issue to the defense once a complaint alleges the existence of an employment relationship at the time of the employee's tort." *Our Lady of Peace, Inc. v. Morgan*, 832 S.E.2d 15, 25 (Va. 2019).

The Supreme Court of Virginia recently restated its application of respondeat superior in *Our Lady of Peace*. It recalled that "the first principle of respondeat superior is that vicarious liability may be imposed on an employer when 'the *service itself*, in which the tortious act was done, was within the ordinary course of the employer's business.'" *Id.* (quoting *Parker v. Carilion Clinic*, 819 S.E.2d 809, 819 (Va. 2018)). "In our leading cases, 'the tortious act or transaction occurred *while* the employee was in fact performing a *specific job-related service* for the employer, and, but for the employee's wrongdoing, the service would otherwise have been within the authorized scope of his employment.'" *Id.* (quoting *Parker*, 819 S.E.2d at 820). The court acknowledged, as it did in *Parker*, that the issue of an employee's motive has been applied somewhat inconsistently and sought to clarify what role the motive should play in the scope-of-employment determination:

> "For nearly a century, we have stated that respondeat superior liability cannot extend to an employer for an unauthorized tortious act by an employee arising '*wholly* from some external, independent, and personal motive on the part of the employee to do the act upon his own account.'" . . . [This inquiry] "tracks analogous requirements in the second and third Restatements of Agency," which "[b]oth make clear that a servant's tortious act 'is within the

> scope of employment if, but only if[,] it is actuated, *at least in part*, by a purpose to serve the master'" and that "an employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve *any* purpose of the employer."

*Id.* (quoting *Parker*, 819 S.E.2d at 821–22) (second and third alteration in original).

Laporsek cites to several cases to support his position that Burress acted in the scope of his employment with Cooke. In *Bryant v. Bare*, 64 S.E.2d 741 (Va. 1951), a farm employee was given permission to use a truck from the farm to run personal errands if he would also run errands for his employer. On a detour from his work, the employee drank beer. He then drove through a median and hit two pedestrians while driving the truck back to the farm. The Supreme Court of Virginia upheld the trial court's decision to submit the issue to the jury, noting that the employee had a mixed motive: although he was driving the vehicle in part for his own personal reasons, the accident occurred after the employee began returning the truck back to the farm as instructed by his employer. Relying on *Bryant* and the standards reiterated in *Our Lady of Peace*, Laporsek argues that Burress's intoxication, without more, cannot support Cooke's defense.

Cooke, in response, argues that it has a strict no-alcohol policy, and if a driver violates the policy, he is terminated immediately. (*See* Def. Br. Opp. 4, Dkt. No. 85.) Accordingly, it argues that Burress was not driving under its direction. It further points out that many of the cases cited by Laporsek went to the jury, supporting its position that summary judgment on this issue is improper.

Two additional cases shed light on this issue. In *Kensington Associates v. West*, 362

S.E.2d 900 (Va. 1987), the Supreme Court of Virginia reversed a trial court's decision to submit the scope-of-employment issue to the jury. The defendant, Kensington Associates, employed a security guard to stand watch in its building, which was undergoing construction. Kensington strictly prohibited drinking on duty and had previously instructed the guard not to bother any construction workers or to enter a recreation room set up for the construction workers. Despite Kensington's instructions, the security guard engaged in "horseplay" with one of the construction workers and drank "a couple of beers." During the course of his "horseplay," the security guard accidentally shot the plaintiff in the off-limits workers' recreation room. The security guard "said he pulled the pistol to have 'fun,' . . . not to protect Kensington's property." *Id.* at 901. In reaching the decision that the security guard acted outside the scope of his employment with Kensington, the court noted that "[n]either the 'horseplay' nor the resulting shooting was done to further Kensington's interest, but arose wholly from an independent, external, and personal motive . . . to perform an act on his own account." *Id.* at 903. When the security guard "undertook the draw his pistol, he embarked upon an independent venture to satisfy his own personal desire to have 'fun' and 'play' around, thus suspending for a time the employer-employee relationship." *Id.* While the court did note that the security guard had been drinking against Kensington's rules, it appears that played little role in the court's decision.

The Fourth Circuit later discussed *Kensington* in some detail in *Gutierrez de Martinez v. Drug Enforcement Admin.*, 111 F.3d 1148 (4th Cir. 1997). In *Gutierrez de Martinez*, a DEA agent was involved in a car accident in which the plaintiff and her passengers were injured. The DEA agent admitted he had consumed alcohol, but the parties disagreed over whether he was

8

intoxicated. The Fourth Circuit held, "we are convinced that Virginia courts would reject the argument that consumption of alcohol vitiates the employment relationship. As noted above, the Virginia courts generally take a broad view of the employment relationship, and have held that even intentional torts may be within the scope of employment." *Id.* at 1158.

In each of these cases, the fact that the negligent party had consumed alcohol was not the determinative factor in the courts' scope-of-employment analyses. Rather, it was the underlying act and motive that guided the courts' decisions. Here, although Burress consumed alcohol before driving his tractor trailer in defiance of Cooke's rules, the evidence makes clear that he reported for work and was on his route to deliver a load for Cooke. He did not deviate from his route and expressed no motive other than to complete his task for Cooke. Notwithstanding Cooke's rules against alcohol consumption, the court agrees with *Gutierrez de Martinez*—the fact that Burress drank prior to reporting to work, without more, does not "vitiate the employment relationship." *Id.*

Accordingly, the court finds as a matter of law that Burress acted within the scope of his employment with Cooke Trucking and will grant Laporsek's motion for partial summary judgment. Consequently, the court need not consider Laporsek's alternative motion in limine.

## C. Burress's Motion for Partial Summary Judgment

While Burress admits liability as to Laporsek's negligence claim, he seeks summary judgment on the issue of whether he acted willfully and wantonly or with conscious disregard for other drivers' safety. In particular, he argues that the evidence is insufficient to prove that he acted willfully or wantonly and that Laporsek failed to state a claim under Virginia Code § 8.01-

44.5 by omitting any reference to the statute in his amended complaint.

### 1. Common-law punitive damages

Virginia has "repeatedly stated that an award of punitive damages is not favored generally because punitive damages are in the nature of a penalty and should be awarded only in cases involving the most egregious conduct." *Madison v. Acuna*, No. 6:12-cv-00028, 2012 WL 6196450, at *3 (W.D. Va. Dec. 12, 2012) (quoting *Bowers v. Westvaco Corp.*, 419 S.E.2d 661, 668 (Va. 1992)). "In order to support an award of punitive damages in a personal injury case, the evidence must establish that the defendant's conduct was so willful or wanton as to show a conscious disregard for the rights of others." *Huffman v. Love*, 427 S.E.2d 357, 359 (Va. 1993) (citing *Booth v. Robertson*, 374 S.E.2d 1, 3 (Va. 1988)). In Virginia, willful and wanton behavior requires an "action undertaken in conscious disregard of another's rights or with reckless indifference to consequences with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another." *Booth*, 374 S.E.2d 268.

The Supreme Court of Virginia has acknowledged that "intoxication, of itself, will not subject a negligent driver to an award of punitive damages. Rather, the defendant's entire conduct must be considered in determining whether it showed a conscious disregard for the safety of others." *Huffman*, 427 S.E.2d at 360 (citations omitted). "If present, evidence of intoxication is an objective fact, to be considered in the context of defendant's negligent conduct, in assessing whether there is sufficient evidence to present the issue of punitive damages to a jury." *Id.*

Virginia courts have decided numerous cases involving similar facts and generally found that only the most egregious of scenarios will reach the jury on issues of punitive damages.[4] *See Vest v. Paxton*, No. 95-0749-R, 1996 U.S. Dist. LEXIS 8199 (W.D. Va. Mar. 8, 1996) (dismissing a claim for punitive damages where the driver drank twelve ounces of bourbon, resulting in a BAC of 0.20%–0.23%, attempted to brake, crossed the median, and may have attempted to flee the scene); *Huffman*, 427 S.E.2d 357 (allowing a claim for punitive damages to reach the jury where the driver was speeding, had two prior DUI convictions, had a BAC of 0.32%, hit another car immediately before the accident at issue, crossed into oncoming traffic, fled the scene, and could not stand, walk, or talk without assistance); *Puent v. Dickens*, 427 S.E.2d 340 (Va. 1993) (affirming a trial court's decision that the defendant's conduct was not willful or wanton as a matter of law where the defendant was speeding, did not apply the brakes before hitting the plaintiff, had a BAC of 0.24%, and attempted to leave the scene of the accident); *Hack v. Nester*, 404 S.E.2d 42 (Va. 1990) (reversing a judgment awarding punitive damages where the driver was not speeding, had a BAC of 0.09%–0.114% and a history of two prior DUIs, had night blindness but was driving at night, and drove into oncoming traffic); *Booth v. Robertson*, 374 S.E.2d 1 (Va. 1988) (overturning a trial court's decision to disallow punitive damages where the driver drove at high speeds, had a BAC of 0.22%, traveled the wrong direction down an exit ramp on I-81 despite another driver flashing their lights and honking their horn as a warning, and then driving the wrong direction on I-81 for 0.4 miles). Notably, unlike

---

[4] Laporsek correctly notes that each case should be considered on its individual facts and not tested by comparison to the facts of precedent cases. *See Huffman*, 427 S.E.2d at 360. However, a review of case law on this point nonetheless helps illustrate what constitutes willful and wanton conduct in Virginia.

this case, these cases involve drivers navigating cars, pickup trucks, or SUVs.

Here, Burress was a professional tractor trailer driver. The Supreme Court of Virginia has also held that a driver may be liable for willful and wanton conduct if he is "a professional driver who had received specialized safety training warning against the very omissions he made prior to the accident." *Alfonso v. Robinson*, 514 S.E.2d 615, 619 (Va. 1999). *Alfonso* involved a tractor trailer driver who was not under the influence of alcohol. His tractor trailer stalled in the right lane of the highway, and he failed to put up emergency flares or reflective triangles before leaving his vehicle to call a tow truck. Another driver, not seeing the vehicle stopped on the road, ran into the back of the tractor trailer. *Id.* at 616–17. The Supreme Court of Virginia noted that the defendant was a professional driver who had received education specifically outlining safety protocol for stalled vehicles. Accordingly, the court found that he was aware of the danger to others and consciously disregarded other drivers' safety. It affirmed the trial court's decision to submit the issue to the jury. *Id.* at 619.

Burress argues that *Alfonso* does not apply in this case. He reasons that while *Alfonso* involved specific safety regulations unique to those operating commercial motor vehicles, the requirement at issue here—not to drive under the influence—applies to all motorists. However, this court has previously applied *Alfonso* in the context of drivers who fall asleep at the wheel, which is also clearly prohibited for all drivers. *See Madison v. Acuna*, No. 6:12-cv-00027, 2012 WL 6196450 (W.D. Va. Dec. 12, 2012). In *Madison*, this court found that the plaintiff's amended complaint stated a claim for punitive damages where the plaintiff alleged "that Acuna caused the accident because he fell asleep while driving. This is significant because Plaintiff

also now alleges that Acuna had previously received during his tenure as a driver for Coastal a summons for violating the fourteen-hour rule for commercial truck drivers, which is intended to prevent commercial drivers from operating their vehicles while sleep-deprived." *Id.* at *4. Granted, the court decided *Madison* on a motion to dismiss. However, the court's reasoning holds true—even though falling asleep while driving is prohibited by all drivers, truck drivers are held to a higher standard because they are covered by federal regulations and often receive additional safety training.

Burress was a professional tractor trailer driver who knew the skill required to drive a tractor trailer and the added danger of any accident resulting from his negligent driving. He also received more training than an average driver would have received on the effects of consuming alcohol before driving.[5] Nonetheless, he chose to drink a fifth of bourbon, knowing he was going to be driving within the next hour. He then drove "erratically," nearly running a witness off the road.[6] Burress's actions arguably do not constitute willful or wanton conduct under Virginia's typical common-law standard. However, when taking into account *Alfonso*, along with Burress's status as a professional tractor trailer driver and the additional training he received in that role, a reasonable jury could find that he acted willfully and wantonly. Accordingly, a

---

[5] Burress disputes this; however, the evidence shows that he has a prior DUI (Burress Dep. 17) and has taken additional courses on the dangers of drinking and driving through his training to become a professional driver and through trainings provided by Cooke (*id.* at 10–13). Burress also testified that he knew the dangers of driving a tractor trailer while intoxicated were greater than for other drivers and that the presumption of intoxication for truck drivers is a BAC of only 0.04%. (*Id.* at 38–39, 72–73.)

[6] During his deposition, Burress testified that he was not driving "erratically," but he was driving "intoxicated." He said that he did not know he was swerving until after the accident. To the extent Burress intends to argue that he was too drunk to have "conscious disregard" for others' safety, that argument has already been rejected by the Supreme Court of Virginia. *See Booth*, 374 S.E.2d at 3.

genuine issue of material fact remains, and the court will deny Burress's motion as to Laporsek's claim for common-law punitive damages.

### 2. Statutory punitive damages

Burress next argues that Laporsek "failed to plead a statutory claim for punitive damages." (Dkt. No. 82, at 8.) He points to several out-of-circuit cases in which district courts have dismissed claims where plaintiffs failed to plead the specific statutory basis for those claims. He acknowledges that Laporsek included in his complaint language that "tracked" the statute but maintains that the complaint is nonetheless deficient.

Burress relies first on *Graham v. Prudential Home Mortgage Co.*, 186 F.R.D. 651 (D. Kan. 1999). In *Graham*, the complaint contained few factual allegations and asserted claims for "violations of state statutes and/or regulations," generally. *Graham*, 186 F.R.D. at 653. Because the complaint referred very generally to "statute or regulations" and did not include any other factual allegations, the court held that the defendant was not put on notice as required by Federal Rule of Civil Procedure 8. Here, however, Laporsek pleaded the facts surrounding the collision and forming the basis of his claim for punitive damages against Burress. He did not allege that Burress generally "violated statutes or regulations," but instead pleaded facts that, if proven, would constitute a violation of the Virginia Code. Thus, *Graham* is inapposite.

Burress next cites to *Holler v. Cinemark USA, Inc.*, 185 F. Supp. 2d 1242 (D. Kan. 2002). In *Holler*, the plaintiff asserted a claim for negligence per se but did not identify a statute supporting that claim. The court held that by omitting the statute on which he based his negligence per se claim, the plaintiff failed to state claim. However, *Debord v. Grasham*, No.

14

1:14CV00039, 2014 WL 3734320 (W.D. Va. July 28, 2014), from this district, directly opposes *Holler*. There, the court held that a plaintiff's complaint need not reference a specific statute as the basis for negligence per se. Accordingly, Burress's reliance on *Holler* is similarly misplaced.

In deciding *Debord*, the court relied upon the Ninth Circuit's decision in *Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir. 2008), in which the court of appeals stated "[a] complaint need not identify the statutory or constitutional source of the claim raised in order to survive a motion to dismiss." Similarly, in *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073 (7th Cir. 1992), the Seventh Circuit reviewed the pleading standard of Rule 8(a) and noted the following:

> Rule 8(a) of the Federal Rules of Civil Procedure says that a complaint must identify the basis of jurisdiction and contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although it is common to draft complaints with multiple counts, each of which specifies a single statute or legal rule, nothing in the Rules of Civil Procedure requires this. To the contrary, the rules discourage it. Complaints should be short and simple, giving the adversary notice while leaving the rest to further documents. "The forms contained in the Appendix of Forms are sufficient under the rules and are intended to indicate the simplicity and brevity of statement which the rules contemplate." Fed.R.Civ.P. 84. None of the forms in the appendix spells out a legal theory.

*Id.* at 1077–78. *Bartholet* has been cited by this court favorably in several cases. *See, e.g., Altizer v. Town of Cedar Bluff, Va.*, No. 1:14CV00007, 2014 WL 2535057 (W.D. Va. June 5, 2014) ("It is true that the Complaint does not cite a particular statutory basis for the wrongful discharge claim. But complaints are meant to state facts, not citations of law."); *Debord*, 2014 WL 3734320.

In his reply brief, Burress cited to a number of additional cases in support of his position that a plaintiff must include a citation to a statutory cause of action; however, those cases do not provide that a plaintiff must cite a statutory cause of action, if any, but merely that a plaintiff must provide a *legal basis* for the claim. *See, e.g.*, *Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 445 (E.D. Va. 2009) ("[A] complaint cannot show entitlement to relief without referencing in some way the legal basis for the relief requested and the factual basis for the claim.").[7] He also cites to *Jones v. Slate*, No. 150789, 2016 Va. Unpub. LEXIS 7 (Va. Mar. 31, 2016), an unpublished opinion from the Supreme Court of Virginia. There, the court noted initially that the plaintiff's "complaint did not specify whether she was seeking punitive damages under a common law theory or pursuant to a statute." *Id.* at *1. It later stated:

> In [her] complaint and in her brief to this Court, she fails to cite Code § 8.01-44.5, which provides a statutory mechanism under which persons injured by intoxicated drivers may seek punitive damages. Because Jones did not cite this statute or set forth how the evidence presented at trial proves the necessary elements of this statute, it appears that Jones is not seeking punitive damages pursuant to this statute, but rather is seeking punitive damages under a common law theory.

*Id.* at *4 n.2.

However, reading *Jones* to bar claims of punitive damages would stretch what appears to be clarifying dicta relegated to a footnote in the Supreme Court of Virginia's decision. The

---

[7] Burress also cites to *Salehi v. Wells Fargo Bank, N.A.*, No. 1:11-cv-1323, 2012 WL 2119333, at *5 (E.D. Va. June 11, 2012). In that case, the court began its analysis of the plaintiff's complaint by noting that it "does not specify the statutory basis for Count III," before nonetheless considering whether the plaintiff stated a claim under the Virginia Consumer Protection Act. The court gave no indication that failure to include a citation automatically barred the plaintiff's claim.

16

court did not hold that failure to cite § 8.01-44.5 restricts plaintiffs only to common-law punitive damages. It merely acknowledged that the plaintiff in *Jones* did not cite the statutory provision in her complaint or her brief on appeal. The language of the court's opinion indicates that the plaintiff may not even have pursued statutory punitive damages at trial. *Id.* at *4 ("Because Jones did not cite this statute *or set forth how the evidence presented at trial proves the necessary elements of this statute . . . .*"). At best, the court limited its review of the plaintiff's case for her failure to raise the issue on appeal. Thus, the court merely expressed that it was limiting its review of the plaintiff's case to her common-law claim based on the meager briefing before it. *Id.* at *4. It gave no indication that a plaintiff basing her claim on a statutory provision must cite to that provision in her complaint.

The court finds that Laporsek properly stated a claim to punitive damages by alleging that Burress engaged in conduct meeting the requirements of § 8.01-44.5. His statement that he seeks punitive damages for willful and wanton conduct further provides a legal basis for his claim. Although the court questions whether Laporsek consciously withheld reference to § 8.01-44.5,[8] he nonetheless pleaded sufficient facts to put Burress on notice as required by Rule

---

[8] Section 8.01-44.5 allows a court to award punitive damages "if the evidence proves that . . . the defendant's conduct was so willful or wanton as to show a conscious disregard for the rights of others." Va. Code Ann. § 8.01-44.5. It states that a defendant's conduct is willful or wanton when (1) at the time of the accident the defendant had a BAC of 0.15% or more; (2) at the time the defendant began drinking alcohol he knew or should have known his ability to drive would be impaired; and (3) the defendant's intoxication was a proximate cause of the injury. Laporsek's complaint largely structures his factual allegations like the requirements of the statute—he clearly based his claim on the language of the Virginia Code. Yet, he failed to cite to the statute.

This is exacerbated by Laporsek's response to Burress's discovery request. Burress alleges that "[w]hen Cooke Trucking requested Plaintiff to '[i]dentify all damages sought . . . and *specify the type and amount of each theory of damages*,' Plaintiff again stated '[p]unitive damages to punish the willful and wanton conduct of the defendant." (Reply 8, Dkt. No. 96 (emphasis added).) Again, Laporsek withheld reference to the statute in his

17

8(a). Thus, the court will not dismiss Laporsek's statutory claim for punitive damages.

Accordingly, the court will deny Burress's motion as to Laporsek's claim for statutory punitive damages.

### III. CONCLUSION

For the reasons set forth above, the court will grant Laporsek's motion for partial summary judgment and will deny Burress's motion for partial summary judgment. A separate order will be entered.

Entered: December 10, 2019.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge

---

response even though he intended to pursue statutory damages. Nonetheless, Burress's accusations of untoward conduct are insufficient, without more, to dismiss Laporsek's claim.